[Cite as *Shalersville Twp. Bd. of Trustees v. Hawkins*, 2016-Ohio-2801.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| SHALERSVILLE TOWNSHIP BOARD OF TRUSTEES, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-P-0071** |
| KEVIN W. HAWKINS, | : | |
| Defendant, | : | |
| TERESA J. HAWKINS, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2014 CV 00427.

Judgment: Affirmed.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Christopher J. Meduri*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Timothy J. Hart*, 4030 State Route 43, Suite 105, Kent, OH 44240 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellants, Kevin W. and Teresa J. Hawkins, appeal the trial court's final judgment granting a permanent injunction against them, under which they are required to remove a mobile home/trailer from their property. They contend that the trial court

erred in adopting the magistrate's findings concerning their present use of the trailer because those findings are against the manifest weight of the evidence. For the following reasons, the record supports both the magistrate's and trial court's decision.

{¶2} Appellants reside on approximately six acres on Frost Road in Shalersville, Ohio. Since acquiring title from Kevin's parents in 1998, the couple has built at least three permanent structures. The first structure is their residence. The remaining two are chicken coops. The larger of the two coops houses adult chickens, and the smaller coop is used to protect and nurture the baby chicks.

{¶3} Appellants have raised chickens for almost the entire period they have resided there. Although they collected an average of a dozen eggs a day, they do not typically sell the eggs for profit; instead, they gift excess eggs to family or friends. The only other animals appellants have kept on their land are dogs. During the majority of the years, the dogs were simply family pets. However, after the underlying action was filed, appellants bred and raised a litter of Jack Russell terriers for sale.

{¶4} At some point in 2011, Teresa's grandfather died. Since Teresa was very close to her grandmother, appellants added a mobile home to their property for her to live. The mobile home was placed on a concrete slab that Kevin poured near the main residence, and it was connected to electricity, water, and propane gas. In addition, the majority of their grandmother's personal property was moved to the mobile home.

{¶5} After Teresa's grandmother was residing in the mobile home, the zoning inspector for Shalersville Township, Jason Garey, was informed of the situation. During a meeting with Kevin, Garey told him that, pursuant to the township zoning code, only one residential structure can be maintained on a parcel of land, and that the mobile

home is a second residence.  As a result, Garey instructed Kevin that he would address the issue with the township board of zoning appeals.

{¶6}    During a hearing before the zoning board in October 2011, Kevin asserted that the mobile home was only meant to be a temporary residence for the grandmother, and that he intended to construct a "grandmother" suite as an attachment to his existing residence.   In light of this assertion, the zoning board invoked a provision of the township zoning code and granted appellants a conditional use variance for the mobile home.  Under the variance, the grandmother was allowed to reside in the mobile home during the suite's construction.  However, the board imposed three conditions on the effectiveness of the variance: (1) appellants had to obtain a building permit within six months; (2) construction of the suite had to begin within one year; and (3) the suite had to be finished within two years.

{¶7}    Appellants did not comply with any of the three conditions.  Approximately seventeen months after issuing the variance, the zoning board received notice that, even though the mobile home was still on appellants' property, no progress had been made on the suite's construction.  As a result, Kevin was required to appear before the board in April 2013.  First, Kevin informed the board that construction of the suite was no longer necessary because their grandmother was living in the main residence since one of appellants' daughters went away for college.  Second, Kevin stated that only some of their grandmother's belongings were moved into the existing residence, and that the remainder are still in the mobile home.  Third, he informed the board that he was considering taking a new job in another state, and that he would remove the mobile home from the property before moving his entire family away.  Based upon these

3

statements, the board agreed to grant appellants a six-month extension for removing the mobile home from their property.

{¶8} One year later, appellants had not moved and the mobile home remained. Consequently, the Shalersville Township Board of Trustees, appellee, sought and obtained an injunction requiring removal of the mobile home. The complaint asserts that the mobile home on the property violates both the township zoning code and the prior decisions of the board of zoning appeals.

{¶9} An evidentiary hearing before a magistrate was scheduled for June 4, 2015. A few days before the hearing, Zoning Inspector Garey and a township trustee viewed the inside of the mobile home. In his ensuing testimony, Garey stated that the living room and the kitchen were still fully furnished and contain many personal items belonging to the grandmother. He testified that the kitchen had all of the usual appliances, and that the living room is furnished with a couch, lamp, table, chairs, and that there are dishes in the china cabinet. Garey also testified that the furniture had been removed from one of the bedrooms, and replaced with two chicken cages. According to him, each cage had one adult chicken and a number of baby chicks.

{¶10} In response, Kevin testified that the mobile home was no longer serving as their grandmother's residence and was now used as a structure for raising chickens and dogs. As to the chickens, Kevin stated that the stable environment inside the mobile home would increase the survival rate of the baby chicks. Regarding the dogs, he testified that, even though he had only bred one litter of puppies in the preceding year, he intended to acquire other dogs so he could breed both Jack Russell terriers and German shepherds. Kevin further testified that the second bedroom in the mobile home

4

would be used for raising puppies. Based upon this testimony, Kevin and Teresa argued that the mobile home was exempt from township zoning under R.C. 519.21 because it was now being used for agricultural purposes.

{¶11} In her written decision, the court magistrate first noted that the raising of chickens and dogs constitutes "animal husbandry" that is an agricultural use. Therefore, the magistrate concluded that the application of the agricultural zoning exemption turned upon the resolution of the following factual issues: (1) did appellants primarily use their property for agricultural purposes; and (2) was appellants' use of the mobile home incident to their agricultural use of the land? The magistrate found against appellants on both issues. As to the second issue, the magistrate found that appellants' primary use of the mobile home was not agricultural, and that their use of the trailer was not directly and immediately related to any agricultural use of the property. The magistrate ultimately held the township was entitled to a permanent injunction barring appellants from maintaining it on their property.

{¶12} Appellants objected, primarily arguing that the magistrate misinterpreted the extent of the agricultural exemption, as delineated in R.C. 519.21(A). First, they asserted that agriculture did not have to be the primary use of the subject property in order for the exemption to apply. Second, they contended that the agricultural exemption covered the mobile home even if their use of that structure was not directly and immediately related to agriculture. In addition, they challenged the magistrate's factual findings concerning the present use of the mobile home.

{¶13} Before appellants filed the objections, the trial court issued a judgment adopting the magistrate's decision in all respects and granting a permanent injunction in

favor of the township. As part of that judgment, appellants were ordered to remove the mobile home from their property within 30 days. After appellants submitted their objections, the court issued a second judgment expressly overruling appellants' arguments.

{¶14} In appealing the permanent injunction determination, appellants assert two assignments of error for review:

{¶15} "[1.] The trial court committed prejudicial error in overruling appellants' objections to the magistrate's decision journalized on June 9, 2015; wherein the magistrate concluded that in order to constitute an exempt agricultural use, appellants' primary use of their property must be agricultural.

{¶16} "[2.] The magistrate's decision, affirmed by the trial court, contained findings of fact which are contrary to the manifest weight of the evidence."

{¶17} As noted above, the magistrate's decision focused on two issues: whether appellants primarily used the property for agricultural purposes, and whether their use of the mobile home was incident to the agricultural use of the land. In their first assignment, appellants contend that the magistrate employed the wrong legal standard for determining if the agricultural exemption applies. In their second assignment, they assert that the evidence does not support the magistrate's findings as to whether the mobile home was being used in a manner that was incident to the agricultural use of their land. Since the resolution of the second assignment is dispositive, it will be addressed first.

{¶18} R.C. Chapter 519 governs zoning on unincorporated territory of an Ohio township. R.C. 519.02(A) provides that a board of township trustees may generally

6

regulate, inter alia, the use of land and the size of buildings through the passage of a zoning resolution. However, the statutory scheme recognizes certain exceptions to this basic authority. As relevant here, R.C. 519.21(A) states:

{¶19} "Except as otherwise provided in division (B) of this section, sections 519.02 to 519.25 of the Revised Code confer no power on any township zoning commission, board of township trustees, or board of zoning appeals to prohibit the use of any land for agricultural purposes or the construction or use of buildings or structures incident to the use for agricultural purposes of the land on which such buildings or structures are located, including buildings or structures that are used primarily for vinting and selling wine and that are located on land any part of which is used for viticulture, * * *."

{¶20} In light of the unambiguous statutory language, the agricultural exception prohibits the regulation of land use when the land is used for agricultural purposes, and it prohibits the regulation of buildings when the use of the building is incidental to the use of the land for agricultural purposes. In relation to the buildings, any question as to whether the underlying land is being used for agricultural purposes becomes moot if it is determined that the use of the building is not incidental to that purpose.

{¶21} In applying the agricultural exemption under R.C. 519.21(A), the primary use of a building must be agricultural before its use can be deemed incidental to the agricultural use of the land. *Concord Twp. Trustees v. Hazelwood Builders, Inc.*, 11th Dist. Lake No. 2004-L-012, 2005-Ohio-1791. In *Hazelwood*, the property owner contended that additions to a residence were not subject to township zoning because they would be used in breeding and raising dogs. In holding the agricultural exception

7

inapplicable, the trial court concluded that the building's use was not incidental to agriculture because "the primary purpose of the residence was residential living, and breeding and raising dogs was an ancillary use." *Id.* at ¶42. On appeal, this court affirmed noting that the structure in question was primarily designed for residential living and that only a small portion of it would be used for the dogs. *Id.* at ¶43.

{¶22} In this case, the magistrate specifically found that, at the present time, the primary use of the mobile home was not agricultural. The magistrate further found that appellants' present use of the structure was not directly and immediately related to their agricultural use of the property. In claiming that these findings are against the manifest weight of the evidence, appellants simply argue that Kevin's trial testimony is sufficient to show the mobile home's primary use is now agricultural. However, appellee presented considerable evidence to the contrary.

{¶23} There is no dispute that the mobile home was originally designed for residential living. Moreover, there is no dispute that when the mobile home was initially placed on appellants' property, the grandmother used it for that express purpose. After the grandmother moved into the main residence on the property, appellants removed some of the furniture from the mobile home's two bedrooms and two chicken cages were placed in one bedroom.

{¶24} However, although some of the grandmother's personal belongings were moved into the main residence, a considerable amount of those belongings remained in the mobile home. In fact, two entire rooms, the living room and kitchen, have basically stayed in the same condition they were when she resided there. Furthermore, as part of his trial testimony, Kevin readily admitted that their grandmother was very sentimental

8

and still enjoyed going back to the mobile home and looking at her many keepsakes. This point was reiterated during the testimony of Frank Ruehr, a former member of the township board of zoning appeals. According to him, Kevin told the zoning board during the April 2013 proceeding that the grandmother might pass away if she lost the ability to look at her keepsakes in the mobile home.

{¶25} Moreover, the evidence indisputably shows that appellants did not begin to put the chicken cages and the baby chicks into the mobile home until after appellee brought the underlying case to have the structure removed from the property. Testimony shows that, during the April 2013 proceeding before the zoning board, Kevin asserted that their grandmother had already moved from the mobile home to his residence on the property. Yet, during the evidentiary hearing before the court magistrate, Kevin testified that he did not begin to put the chickens inside the mobile home until the spring of 2015, more than two years after their grandmother moved out and nine months after appellee filed its complaint for the permanent injunction.

{¶26} Taken as a whole, the evidence supports the finding that appellants kept the mobile home as a place to store their grandmother's remaining personal items so that she would be able to see them whenever she wanted, and that the placement of the chickens in the structure was only done as a means of keeping the mobile home on the property. Given this, the magistrate justifiably concluded that the primary use of the mobile home is to store their grandmother's belongings, and that the chicken/dog use is only ancillary, at best. Therefore, since the mobile home's use is not incidental to agricultural use of the land, the agricultural exception is inapplicable.

{¶27} In the context of a permanent injunction proceeding, an appellate court will

9

not reverse the trial court's decision as against the manifest weight of the evidence when the factual findings are supported by competent, credible evidence. *Swan Creek Twp. v. Wylie & Son Landscaping*, 168 Ohio App.3d 206, 2006-Ohio-584, 859 N.E.2d 566, ¶33. In this case, appellee's evidence supports a finding that: (1) the mobile home is subject to zoning and is prohibited. Thus, the preliminary injunction was warranted.

{¶28} Appellants' second assignment of error is without merit. Moreover, given our disposition of the second assignment, the first assignment is moot and need not be addressed. App.R. 12(A)(1)(c). The judgment of the trial court is affirmed.

CYNTHIA WESTCOTT RICE, P.J.,

TIMOTHY P. CANNON, J.,

concur.