[Cite as *Cleveland Skydiving Ctr., Inc. v. Troy Twp. Bd. of Zoning Appeals*, 2025-Ohio-2808.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| CLEVELAND SKYDIVING CENTER, INC., et al., | **CASE NO. 2024-G-0043** |
| Appellees, | |
| - vs - | Administrative Appeal from the Court of Common Pleas |
| TROY TOWNSHIP BOARD OF ZONING APPEALS, | Trial Court No. 2023 A 000576 |
| Appellant. | |

## OPINION  AND JUDGMENT ENTRY

Decided: August 11, 2025
Judgment: Affirmed in part, reversed in part, and remanded

*Thomas A. Barni* and *Andrew J. Yarger*, Dinn, Hochman & Potter, LLC, 6105 Parkland Boulevard, Suite 100, Cleveland, OH 44124 (For Appellees).

*Michael A. Lamanna*, 17119 Northbrook Trail, Chagrin Falls, OH 44023 (For Appellant).

EUGENE A. LUCCI, J.

{¶1}   Appellant, the Troy Township Board of Zoning Appeals ("Board") appeals the judgment of the Geauga County Court of Common Pleas, vacating its determination that appellees, the Cleveland Skydiving Center, Inc., et al. ("Center"), use of their property as a campground did not qualify as a prior nonconforming use. We affirm in part, reverse in part, and remand the matter to the trial court for further proceedings.

{¶2}   The permitted uses for residential property in Troy Township are set forth in Article IV, Section 402.1 of the Troy Township Zoning Resolution. That section was

enacted in 1984 and was last amended in August 2017. It does not include campgrounds among permitted uses for residential districts.

{¶3} The Center was instructed by the Township to discontinue its use of the property as a campground. As a result, this matter originally commenced upon the Center's request for a use variance to utilize a portion of its property as a campground, which is zoned residential, pursuant to the 1984 amendment to the zoning resolution. The Board denied the request and the matter was appealed, pursuant to R.C. Chapter 2506, to the Geauga County Court of Common Pleas ("Case No. 21A000405").

{¶4} The trial court affirmed the Board's determination regarding the denial of the Center's request for a use variance. The trial court, however, issued a separate order remanding the matter to the Board to determine if there was a preexisting, non-conforming use – a use which might be validated via the colloquial term designated as "grandfathering." The prior-nonconforming-use argument was a matter not broached by the Board in its original determination.

{¶5} In the Case No. 21A00405 appeal, the trial court acknowledged that the Center could have asserted that its property qualified as a prior nonconforming use in its initial application, which it did not. Still, the court recognized that certain witnesses who either testified or made comments at the hearing before the Board (and even one of the Board's members) indicated that camping on the property "may well have been in existence on the property well before the 1984 township zoning enactment which classified the property for residential use." *See* Trial Court Judgment Entry, issued April 17, 2023, in Case No. 21A000405, p. 2. Accordingly, the trial court found that, in the

interest of justice, the matter should be remanded for the Board to fully consider the issue of a prior non-conforming use.

{¶6} Neither party immediately appealed the April 17, 2023 judgment affirming the Board's denial of the use variance.

{¶7} On July 6, 2023, the Board issued a notice of a public hearing relating to the trial court's remand order. In part, the notice provided that the "application for that appeal pertains to **Article IV Section 402.1 Permitted Principal Buildings, Structures and Uses, Letters A-H** . . . ." (Emphasis sic.) That section of the Troy Township Zoning Code, adopted in 1984, classified the Center's property as residential. Therefore, the question before the Board was whether the Center's non-conforming use predated the 1984 enactment.

{¶8} On July 27, 2023, additional evidence was taken during the remand hearing. The Board and the Center were each represented by counsel. During the hearing, evidence established camping occurred on the property, free of charge to instructors and jumpers, as early as the mid-1960s. Although several witnesses stated the Center (and therefore the camp) was not operating during certain seasons, other witnesses contested this testimony and provided factual evidence that, during the alleged "shut-down" periods, they indeed jumped and camped at the Center's property.[1] Moreover, multiple witnesses

---

1.Testimony of Ron Berring ("There was a closed sign placed over parachute club sign . . . around 2008. So if the question is whether it has been continuous, well, it has not." July 27, 2024 hearing, p. 79); testimony of Laura Leeds ("There was no campground [in 2014] . . . I want to say maybe 2016, '17 is when they started camping over there." *Id.* at pp. 83-84); However, *see also* testimony of Bella Vilshanetskaya ("In 2008 I did two tandems at [the Center], both times I witnessed tents and trailers set up in the camping area . . ." *Id.* at p.81); testimony of Marie Smith ("I had a camper there in 2014 for the entire season, and actually left it there on the property for [the] majority of that winter, as did two other skydivers . . . There were campers on the property [during 2016 and 2017]. Mine was one of them. I lived there." *Id.* at pp. 85-86) Ms. Smith also testified to photos she possessed with various campers on site during 2016 and 2017. *Id.*

Case No. 2024-G-0043

testified that camping had occurred continuously until the township ordered the Center to cease allowing campers.

{¶9} Further, testimony indicated that the Center did not charge for camping because it was merely an accessory to the business. In other words, the property was not a location sought to "camp out" unto itself but was an ancillary component of the skydiving business used by employees and skydivers who paid to jump.

{¶10} One witness, Mary O'Reilly-Whitehouse, who was also a skydiving instructor at the Center, testified that the camping area was not a location where "people go and camp out because they want to sleep in their tent." She emphasized that weather and aircraft issues (repairs and the like) might postpone customers' ability to jump. Accordingly, O'Reilly-Whitehouse stated the camp area is a necessity. She testified that

> having people be there is the only way you can operate a skydiving business successfully. And you also have to have a place for those people to be, or they won't come to your business. They'll go to where they can camp out and spend the whole day and spend the whole weekend. That's just how skydiving operates.

{¶11} During the hearing, the Board entered into executive session for approximately 45 minutes. The Board subsequently entertained statements of Joe Orlowski who identified himself as the Troy Township Zoning Inspector. It is unclear whether Orlowski was present during the "group" swearing-in, and he was not individually sworn to testify to his statements. Orlowski stated that the original zoning resolution became effective in Troy Township in November 1956.

{¶12} Orlowski then read from a pamphlet, which was not provided to the Center prior to the hearing and was not formally submitted into evidence at the hearing. According to the pamphlet from which Orlowski apparently read, Troy Township zoning

Case No. 2024-G-0043

prohibited "the use of tents or cabins for commercial purposes and trailer coaches for permanent resident purposes" as far back as 1956.[2]

{¶13}   After the hearing, the Board determined that the Center had not established a prior non-conforming use. The Center appealed to the trial court and, under a separate case number (Case No. 2023 A 000576, or "the instant case") that was assigned to a different judge, the trial court concluded the Board's decision "is unconstitutional, illegal, arbitrary, capricious, unreasonable, and unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." *Id.* at p. 13.

{¶14}   In particular, the trial court, sua sponte, determined that the Board erred in failing to address or consider the impact of the Center's equitable defenses of estoppel and laches.[3] Regarding the former, the trial court observed that the Center's use of its property for camping was known to Troy Township for approximately 50 years before it attempted to prohibit the use. The trial court noted that the Board's "50-year silence misled [the Center] into believing camping was a permitted use."

{¶15}   With respect to the defense of laches, the trial court underscored that "[w]ithout excuse," the township failed to exercise any alleged right it possessed to prohibit the Center's use of the property for camping. The court emphasized that this use was known, is integral to the Center's skydiving business, and the Center would be injured if it was prohibited.

---

2. Although the Center ultimately contended that the effect of the 1956 resolution would not impact its position on its post-remand appeal to the trial court (because the testimony and evidence revealed that camping was free to instructors and paying customers to the skydiving club and thus not a commercial activity), we need not reach this point in the instant appeal.
3.These equitable defenses were not specifically raised by the Center at the remand hearing to the Board or on appeal to the court of common pleas.

Case No. 2024-G-0043

{¶16} Finally, the trial court determined that the Center was not afforded procedural due process because it was not provided actual notice that the Board intended to rely upon the 1956 resolution, of which the Center was unaware and had never been mentioned in the notice of public hearing. The court observed that the Center was entitled to reasonable notice of the hearing date, time, place, and *subject matter of the hearing*. The only subject matter set forth in the remand order and hearing notice was whether camping predated the 1984 zoning resolution, not the 1956 resolution.

{¶17} The trial court accordingly reversed the Board's decision.

{¶18} On November 7, 2024, the Board appealed both the April 2023 and the October 2024 judgments. On February 10, 2025, in *Cleveland Skydiving Ctr., Inc. v. Troy Twp. Bd. of Zoning Appeals*, 2025-Ohio-435 (11th Dist.), this court dismissed the Board's appeal of the April 2023 judgment as untimely filed. This court held:

> The April 2023 remand order instructed the Board to rule on a new issue that was not before the trial court on appeal. This judgment – affirming the limited nature of the Board's adjudication – was final and not appealed. The remand order was within the trial court's jurisdiction and that remand did not affect the finality of the judgment entry. The judgment was final in April 2023 and, because it was not appealed within 30 days, the instant appeal of that judgment is untimely.

*Id.* at ¶ 13.

{¶19} The instant appeal, which pertains to the trial court's October 2024 judgment, is now before this court. We shall first set forth the applicable standard(s) of review for administrative appeals brought pursuant to R.C. 2506.04.

{¶20} In an R.C. 2506.01 administrative appeal to the court of common pleas, the trial court considers the whole record and determines whether the administrative order is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the

preponderance of substantial, reliable, and probative evidence . . . ." R.C. 2506.04. *See also Henley v. Youngstown Bd. of Zoning Appeals,* 2000-Ohio-493, ¶ 22. The trial court weighs the evidence to consider whether a preponderance of reliable, probative, and substantial evidence supports the administrative decision. *Id.* If the evidence supports the decision, the court may not substitute its judgment for that of the board. *Independence v. Office of the Cuyahoga Cty. Executive*, 2014-Ohio-4650, ¶ 13, citing *Dudukovich v. Lorain Metro. Hous. Auth.,* 58 Ohio St.2d 202, 207 (1979). If the evidence does not, "the court may reverse, vacate, or modify the administrative decision." *Independence* at ¶ 13.; R.C. 2506.04.

{¶21} An appellate court's standard of review under R.C. Chapter 2506 is more limited. *Henley* at ¶ 23, citing *Kisil v. Sandusky,* 12 Ohio St.3d 30, 34 (1984). The court of appeals reviews a court of common pleas' judgment only on questions of law and does not enjoy the same broad authority to weigh the evidence. *Henley*. "Within the ambit of questions of law for appellate-court review is whether the common pleas court abused its discretion." *Independence* at ¶ 14, citing *Kisil* at 34, fn. 4.[4] The court of appeals shall affirm the trial court unless it finds, as a matter of law, that the trial court's decision is not supported by a preponderance of reliable, probative, and substantial evidence. *Kisil* at 34.

{¶22} Decisions on constitutional matters, however, are reviewed de novo. *See, e.g., Brown v. Painesville Twp. Bd. of Zoning Appeals*, 2005-Ohio-5608, ¶ 26. We acknowledge *Brown*, among other cases, specifically holds that the constitutionality of *a*

---

4. The Supreme Court of Ohio has cited the abuse-of-discretion standard as this court's governing standard of review on questions of law. It is not entirely clear, however, how a trial court could possess the discretion to enter a judgment that is contrary to law. We shall nevertheless proceed under the standard set by the Supreme Court except as the issues relate to the trial court's analysis of constitutional questions.

Case No. 2024-G-0043

*zoning ordinance* is reviewed de novo because an administrative body does not have the authority to determine constitutional questions. It nevertheless stands to reason that a challenge to procedural due process would be a matter of plenary review to the trial court because the lack of notice and an opportunity to be heard necessarily implies the proceedings *before* the Board were compromised by an alleged constitutional violation.

{¶23} With these standards of review in mind, the Board assigns seven errors for this court's consideration. The first assignment of error provides:

{¶24} "The court committed prejudicial error by including as 'facts' the description of the argument made by [the Center] for a remand, especially as it relates to the '1984 Resolution' at I.B, of the court's decision (T.d.83, p.3), which, as a matter of law, are not evidence, and since they relate to the matters on which the court ruled, they may have improperly affected such decisions."

{¶25} In its October 2024 judgment entry reversing the Board's decision, the trial court referenced the previous April 2023 judgment (remanding the matter to the Board for further proceedings to address the issue of a prior non-conforming use). The October 2024 judgment, quoted from the April 2023 judgment; specifically:

> Appellants argue their campground has been in existence . . .
> prior to the enactment of the township's zoning resolution in
> 1984. If so, Appellants use . . . grandfathered . . . From the
> record . . . camping at this property may well have been in
> existence on the property well before the 1984 township
> zoning amendment . . . the BZA's decision to proceed to a
> final determination without more evidence on the issue must
> be considered arbitrary and capricious.

*See* October 2024 judgment entry, p. 3, quoting the April 2023 judgment entry, pp. 1 and 3.

{¶26} Although not entirely clear, the Board appears to assert that the trial court, in the 2024 judgment, erred in citing the 2023 judgment because it treated the foregoing quote(s) as evidence. We do not agree with the Board's postulation.

{¶27} First, in the original appeal to the court of common pleas, the Board, in its brief, appeared to agree that the 1984 amendment was controlling. Although the Board disputed that the Center could raise the prior-non-conforming-use argument, it nevertheless firmly asserted there was no evidence in the record that the camping area existed prior to 1984. No other ordinance or amendment was mentioned or considered. Thus, the Board asserted there was no basis for the trial court to broach the issue of a prior non-conforming use.

{¶28} Despite the Board's argument, the trial court, in its original April 2023 remand order, determined that the BZA erred in failing to consider the issue of a prior non-conforming use because the matter was mentioned at the initial hearing. Pursuant to R.C. 2506.04, a court of common pleas may "remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court." The instructions of the trial court required the Board to enter a decision "to determine whether or not the campground use qualifies as a prior non-conforming use." April 2023 judgment, p. 3. The trial court remanded the matter, in the interest of justice, for the Board to consider whether the scope of the Center's business, which enveloped camping on its property for customers and employees, existed prior to the 1984 township zoning enactment. It was this amendment on which the trial court ordered the Board to focus.

{¶29} Given the Board's ostensible agreement (during the first appeal) that the 1984 amendment governed the question of a prior non-conforming use, the trial court, in the second appeal, did not err in citing the portions of the first remand order as a basis for guiding its initial analysis. The trial court, in the October 2024 judgment, listed the quotation(s) under the heading of "Facts." Nevertheless, the parties and the court of common pleas agreed that, prior to the remand, the applicable zoning provision was the 1984 amendment classifying the Center's property as residential. We perceive no error in the trial court treating that portion of the earlier order as a matter which was previously established in the case. *See Giancola v. Azem*, 2018-Ohio-1694, ¶ 14, quoting *Hopkins v. Dyer*, 2004-Ohio-6769, ¶ 15, quoting *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984) ("""The [law of the case] doctrine provides that a decision of a reviewing court in a case remains the law of that case on the legal question involved for all subsequent proceedings in the case at both the trial and reviewing levels.""").

{¶30} The Board's first assignment of error lacks merit.

{¶31} The Board's second assigned error asserts:

{¶32} "The court committed prejudicial error by including as 'facts' the items set forth in I.D, p[.] 3-4 and I.E of the court's decision (T.d.83, p.6) which were fact statements of a person who was not a competent witness and which, as a matter of law, are not evidence, and since they relate to the matters on which the court ruled, they may have improperly affected such decision."

{¶33} Under this assignment of error, the Board appears to assert that the trial court committed error by characterizing statements by unsworn individuals as evidence. We do not agree.

{¶34} A review of the transcript of proceedings fails to demonstrate the members of the Board were witnesses. At the commencement of the July 2024 hearing, the Chairman swore in all people who were present. The en masse "swearing in" took place, and there were no objections to the procedure.

{¶35} Counsel for both parties represented that neither attorney would testify as factual witnesses, and the Board acknowledged its role as the factfinder. Nothing in the transcript of proceedings even remotely suggests the Board or counsel for either party offered testimony. To the extent the Board argues otherwise, its position lacks merit.

{¶36} Ancillary to the foregoing, the Board asserts the trial court (in the October 2024 judgment entry) treated the Board's statements and/or counsel's statements as evidence.

{¶37} The trial court outlined the arguments advanced by the parties' counsel and further set forth statements made by the Board's Chairman. The trial court then set forth notable evidence and testimony from the July 2024 hearing. Based upon these points – as in any appeal – the trial court rendered its judgment. Any attempt to over-characterize the trial court's factual findings or its statements of the April 2023 judgment as problematic are not well taken. The trial court set forth statements and testimony; the former served as a way of framing the latter. This is consistent with the reception of argument and testimony in all legal proceedings. Further, the statement of the Chairman's observations simply echoed the record.

{¶38} Finally, the public hearing minutes are a factual aspect of the record. The court of common pleas' quotation of the same serves as the basis for its ultimate decision.

The record is the record. The Board's attempt to undermine the court's decision on the foregoing bases is without merit.

{¶39} The second assigned error is without merit.

{¶40} The third assignment of error contends:

{¶41} "The court committed prejudicial error by applying the doctrines of estoppel and laches with respect to enforcement of zoning regulations to [the Center] regarding camping."

{¶42} Under this assignment of error, the Board claims the trial court erred in applying the doctrines of estoppel and laches because such defenses (1) were not timely raised; (2) are not available generally against governmental agencies, or under the circumstances of this case to any exceptions to that general principle; (3) are factually based rulings for which there was no evidentiary hearing; and (4) exceed the scope of what might be factually supported.

{¶43} The Board initially claims, pursuant to Civ.R. 8, the doctrines of estoppel and laches are affirmative defenses that must be proved by the party seeking to enforce them. According to the Board, they cannot be raised by the court on appeal, sua sponte or otherwise, if they were not formally asserted in an initial proceeding. The Board maintains, in effect, that the failure of the Center to raise the theories results in waiver of the same.

{¶44} Initially, "[t]he Civil Rules apply to all legal proceedings except 'special statutory' proceedings where they are 'clearly inapplicable.'" *Gordon v. Mt. Carmel Farms, LLC*, 2024-Ohio-1313, ¶ 37 (12th Dist.), quoting Civ.R. 1(C). "An administrative appeal filed pursuant to statute is a special statutory proceeding." (Citation omitted.) *Middlebrook*

*v. United Collection Bureau, Inc.*, 2017-Ohio-8587, ¶ 8 (10th Dist.). In this respect, the pleading requirements of Civ.R. 8 do not apply to the "appellate" proceedings in the trial court.

{¶45} Furthermore, neither a complaint nor an answer was filed by the Center. For this additional reason, it is unclear how an affirmative defense could be waived or forfeited.

{¶46} Nevertheless, generally, the doctrines of laches and estoppel may not be applied to prevent local governments from enforcing a zoning regulation. *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143 (1990), paragraph three of the syllabus. This is because a government agency may not be estopped from its duty to protect the public, and to hold otherwise would grant a right to violate the law. *Id.* at 146. Laches and estoppel, however, may be available in zoning matters where factually warranted. *See, e.g., Oxford v. Day*, 1998 WL 117167 (12th Dist. Mar. 16, 1998) (observing that the Supreme Court of Ohio has regularly indicated its reluctance to impose the doctrines relates more to the specific facts of the case; in other words, application of particular facts, rather than an absolute bar to the availability of the doctrines as legal defenses).

{¶47} A review of the record demonstrates that the Center did not raise the defenses at any stage of the proceedings below. Indeed, the equitable defenses were not mentioned in the Center's merit brief or its reply brief to the court of common pleas. Although there were passing references during the hearing on remand that the campground had existed for some 50-plus years without any indication that the township intended to find a violation, the trial court did not conduct a hearing to afford the parties

Case No. 2024-G-0043

an opportunity to substantiate or defend against the equitable defenses at issue. We find this problematic.

{¶48} The fundamental principle of procedural due process is the right to reasonable notice and a reasonable opportunity to be heard. *Huntington Natl. Bank v. 5777 Grant, L.L.C.*, 2014-Ohio-5154, ¶ 16 (8th Dist.), quoting *Sprouse v. Miller*, 2008-Ohio-4384, ¶ 13 (4th Dist.) ("'The essence of procedural due process is the right to receive reasonable notice and a reasonable opportunity to be heard.'"). The right to notice and an opportunity to be heard must be meaningful. *Huntington* at ¶ 16, quoting *Williams v. Dollison*, 62 Ohio St.2d 297, 299 (1980) ("'Due process of law implies, in its most comprehensive sense, the right of the person affected to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of right in the matter involved.'"). In this case, the trial court did not abide by this important principle in reversing the Board's judgment on the basis of the defenses of laches and estoppel. The Center did not advance the argument, and no hearing was held on the point prior to the trial court issuing its ruling.

{¶49} Considering these points, we conclude the trial court abused its discretion in concluding the Center *established* these defenses. Further, to the extent the trial court's decision to reverse the Board's decision on these bases without notice to the Board and allowing it the opportunity to be heard, we deem such a conclusion is error.

{¶50} Nevertheless, the trial court's decision is not entirely premised upon the operation of the unargued equitable defenses. Indeed, in its judgment, the trial court's substantive ruling appears to be primarily premised upon the Board's violation of constitutional due process, a matter we shall address below. Still, in light of the manner

in which the trial court drafted its judgment, one could draw the reasonable conclusion that it relied upon the unargued equitable defenses in arriving at its disposition. To the extent this is so, it abused its discretion.

{¶51} The Board's third assignment of error has merit.

{¶52} We shall next address the Board's fourth and sixth assignments of error together as they share a common analytical thread. They provide, respectively:

{¶53} "[4.] The court committed prejudicial error by finding that the notice of hearing with respect to the [Board's] hearing violated due process by failing to provide[] adequate notice of the substance of the hearing and/or by reversing the decision of the [Board] which was an improper remedy for such a due process violation if it existed."

{¶54} "[6.] The court committed prejudicial error by finding that the [Board's] handling of the 1956 Resolution was a violation of due process, and if there were such issues they were waived by [the Center]."

{¶55} The Board initially claims that the public notice of the hearing only described the nature of the case and not the parameters of the issues to be considered by the Board. That is, the Board seems to assert that because there is no reference to the year "1984", it was entitled to consider additional aspects of the Troy Township Zoning Resolution that could impact the Center's position. We do not agree.

{¶56} The original remand order addressed *only* the 1984 amendment. In the remand order, the trial court specifically determined that "[f]rom the record before the court, there is certainly a suggestion in the comments of certain witnesses at the hearing, and even one of the BZA members, that camping at this property may well have been in existence on the property *well before the 1984 township zoning enactment which*

*classified the property for residential use.*" (Emphasis added.) The Board did not timely appeal this judgment, and therefore it is the law of the case. *See Giancola*, 2018-Ohio-1694, at ¶ 15.

{¶57} The Board does not assert that the Center was or should have been on notice of the 1956 resolution. And the Center has regularly argued that, despite reasonable efforts, it found no copy of the 1956 resolution available to the public. Not until the Center "rested" at the remand hearing before the Board, was it aware of the 1956 resolution. We view this arguably "ambush" tactic unfair and improper.

{¶58} The notice of the hearing before the Board on remand provides:

> Notice is hereby given that the Troy Township Board of Zoning Appeals (BZA) will conduct a public hearing for the continuation of application ZP21-24 on the 27th [sic.] day of July two thousand and twenty-three at 7:00 o'clock p.m. at the Troy Community Center, 13950 Main Market Road, Burton, OH 44021.
>
> This is a continuation of application #ZP21-24, which was submitted by Marcie Smith/Cleveland Skydiving Center in 2021, and requested that she be granted relief regarding a use condition zoning certificate to use the lot for a campground. The application for that appeal pertains to **Article IV Section 402.1 Permitted Principal Buildings, Structures and Uses, Letters A-H** which lists permitted principal buildings, structures and uses. Campgrounds is not listed as a permitted use and their request was to use the lot for a campground.
>
> On June 9, 2021, the BZA denied this appeal. Marcie Smith/Cleveland Skydiving Center appealed the decision to the Geauga County Court of Common Pleas. On April 17, 2023 the court remanded this appeal back to the BZA for further BZA hearing(s) to determine whether or not the campground use qualifies as a prior non-conforming use. The Appellants will bear the burden of demonstrating the campground use does not qualify.

(Emphasis sic.)

{¶59} The notice states that the original appeal "*pertains to* Art. IV, Section 402.1 . . .." This provision is the same provision referenced by the trial court in its remand order; namely, the 1984 amendment. Just as the Board could not have known the trial court would consider the equitable defenses of laches and estoppel, the Center could not have known the Board intended to introduce a copy of an allegedly nonpublic and therefore not discoverable rendition of the 1956 Troy Township Zoning Regulation. The notice, when read in conjunction with the remand order, states that the Board would conduct a hearing on whether the property qualifies as a prior non-conforming use of the property as it relates to the 1984 amendment. The Board's attempt to construe it otherwise is unavailing.

{¶60} We recognize that the Board's construction may create an ambiguity in the nature of what the focus of the remand hearing would entail. Nevertheless, as the local governing body, the Board, which now seeks to restrict the Center's use of property, should have its alleged ambiguous notice strictly construed against it.

> All zoning decisions, whether on an administrative or judicial level, should be based on the following elementary principles which underlie real property law. Zoning restrictions are in derogation of common law and deprive a property owner of certain uses of his land to which he would otherwise be lawfully entitled. Therefore, such resolutions are ordinarily construed in favor of the property owner. Restrictions on the use of real property by the ordinance, resolution or statute must be strictly construed, and the scope of the restrictions cannot be extended to include limitations not clearly prescribed. (Sic.)

*Saunders v. Clark Cty. Zoning Dept.*, 66 Ohio St.2d 259, 261 (1981); citing *In re University Circle Inc.,* 56 Ohio St.2d 180, 184 (1978); *Pepper Pike v. Landskroner*, 53 Ohio App.2d 63, 76 (8th Dist. 1977); *Davis v. Miller*, 163 Ohio St. 91, 95 (1955) (Taft, J., concurring);

Case No. 2024-G-0043

*State ex rel. Ice & Fuel Co. v. Kreuzweiser*, 120 Ohio St. 352 (1929); and *State ex rel. Moore Oil Co. v. Dauben*, 99 Ohio St. 406 (1919), paragraph one of the syllabus.

{¶61} Ambiguities in zoning provisions which restrict the use of an individual's land must be construed against the zoning resolution because the enforcement of such a provision is an exercise of police power that constricts property rights. *Freedom Twp. Bd. of Zoning Appeals v. Portage Cty. Bd. of Mental Retardation & Developmental Disabilities*, 16 Ohio App.3d 387, 390 (11th Dist. 1984).

{¶62} The issue is not the ambiguity of a zoning ordinance, but the alleged ambiguity of the Board's self-drafted notice of a hearing which might indeed restrict the Center's use of its property. Despite the clarity of the remand order, the Board's claim that the notice allowed it to transcend the order is not well-taken. Still, even if the notice could be construed as ambiguous, we will strictly construe its content against the Board.

{¶63} Next, the Board claims it properly entered the 1956 resolution into evidence and the failure of the Center to object waived any argument of its applicability. The Board's argument is strained, at best.

{¶64} As just observed, the remand order read in conjunction with the notice of the hearing on remand circumscribed the issues, i.e., whether the camping area on the Center's property pre-existed the 1984 amendment. The Board claimed that the remand order somehow presupposed the possibility of the Board utilizing a different method for denying the Center's request. Specifically, the Board claims that, had it realized the issue of a prior non-conforming use was at issue initially, "the zoning inspector would have investigated the zoning at the time alleged and identified the 1956 Resolution as part of his ruling." *See* Board's appellate brief, pp. 15-16. This obfuscates the real issue, i.e.,

whether the Board, in its public notice, should have or even could have, in view of the remand order, broadened the scope of the hearing.

{¶65} Considering the remand order, it is not clear whether the Board could have expanded the scope of the remand hearing. Still, if it had provided thorough notice that the issue of a prior non-conforming use would be entertained *in light of* all allegedly relevant zoning resolutions that might be arguably applicable, no due process concerns would be triggered. Under the circumstances, the Board did not, and the Center was unable to effectively defend the Board's new and substantially different argument.

{¶66} Also, the record belies the Board's argument that counsel failed to object to the so-called introduction of the 1956 resolution. Counsel for the Center took issue with the zoning inspector's presentation of the 1956 resolution and, although that resolution appears (albeit somewhat illegible) in this court's record, there was no formal admission of the "evidence" at the hearing. Under the circumstances, we decline to accept the Board's position that the Center somehow waived or forfeited its right to contest the application of the 1956 resolution.

{¶67} As noted above under the Board's third assignment of error, parties are entitled to procedural due process, i.e., notice and an opportunity to be heard. Given the narrowness of the April 2023 remand order and the general language of the public notice, we conclude procedural due process was not satisfied. The Center, after it presented its final witness, was compelled to address the impact, if any, of the previously undisclosed and ostensibly unavailable 1956 resolution. This violated its right to due process and the trial court did not err in so concluding.

{¶68} The Board's fourth and sixth assignments of error lack merit.

{¶69}   Next, we will consider the Board's fifth assignment of error. It contends:

{¶70}   "The court committed prejudicial error by finding that the [Board] was biased in its actions (which as used here includes related issues regarding fair conduct of the hearing.)"

{¶71}   During the remand hearing, various acrimonious exchanges occurred between the Center's counsel and the Chairman of the Board. During the hearing, the Chairman indicated he did not want to go through all of the sworn affidavits "but we will if you want to." Counsel for the Center observed that "every single one of these affiants swears that camping was continuous." The following argumentative exchange occurred:

> The Chairman: No, they don't.
>
> Counsel: Yes, they do.
>
> The Chairman: No they don't.
>
> Counsel: Yes they do.

{¶72}   Later, counsel asked the landowner: "And the nature of the camping hasn't significantly changed?" The witness replied: "No." After which the Chairman stated "Well no, absolutely it has. He's just contradicted himself." Again, counsel and the Chairman argued over whether the witness had contradicted himself.

{¶73}   Additional squabbles between the Chairman and counsel occurred during the hearing and, at the end of counsel's presentation, the following exchange took place:

> The Chairman: Anybody else? Now or never. All right. Are you done making your presentation?
>
> Counsel: Yes. I want to again, thank you guys - -
>
> The Chairman: *We're* not done. I just want to make sure you were done with making your presentation.

Counsel: I have been doing this for quite some time and I have never had the pleasure of being in front of Troy, obviously. I have never had quite as hostile of a single member before. I appreciate the enthusiasm.

(Emphasis added.)

{¶74} Counsel for the Center then summarized the Center's evidence, noting that "not everybody's recollection about what they did in 1960 or 1970 is perfect, but I think there's been some pretty strong evidence here today of a continuous campground operating out in that field so that the skydivers had someplace to sleep."

{¶75} Subsequent to this exchange, the Chairman called the zoning inspector to speak. At this time, the 1956 ordinance was discussed and read, in relevant part, into the record.

{¶76} As emphasized above, by introducing an alleged original zoning resolution, without notice to the Center, we conclude the Board acted without complete impartiality. Notice and the opportunity to be heard are fundamental cornerstones of the judicial (and quasi-judicial) process. The failure to provide notice of its intent to rely upon a resolution that was not an aspect of the original April 2023 remand order was prejudicial.

{¶77} Considering the several strained exchanges, the suggestion that the Board was a party that decisively had a position to advance, as well as the introduction of the 1956 resolution without the Center's notice, there was evidence of partiality. Because there was *some evidence* that the Board was biased, the trial court did not abuse its discretion in rendering this determination.

{¶78} The Board's fifth assignment of error is without merit.

{¶79} The Board's final assignment of error claims:

Case No. 2024-G-0043

{¶80} "The court committed prejudicial error by reversing the decision of [the Board], which remedy was illegal, unreasonable, unconstitutional, arbitrary and capricious, or an abuse of discretion."

{¶81} Under its seventh assignment of error, the Board claims the trial court erred when it reversed the decision of the Board because the foundation of its reversal was premised upon violations of procedural due process and therefore the trial court lacked jurisdiction.

{¶82} The Center disagrees, asserting that the trial court found that, after reviewing the evidence, the Board's conclusion was not only unconstitutional, but violated other principles of equity. Accordingly, the Center maintains the trial court's decision rendered the Board's decision also illegal, unreasonable, and arbitrary.

{¶83} The trial court's decision that the Board failed to provide adequate notice and an opportunity to be heard does not imply the administrative body lacked personal or subject matter jurisdiction over the matter. To the contrary, it is simply an invocation of a constitutional protection that, in this case, was not honored or preserved. Such an invocation, however, is not, by itself, on the merits.

{¶84} Both parties assert fair points. Nevertheless, because we find the trial court improperly raised, sua sponte, the doctrines of laches and estoppel to support its decision, without notice to the parties or holding a hearing, these arguable foundations for its decision were improper. Further, the trial court determined the Board violated the Center's right to due process–a decision which we affirm. The question, consequently, is one of appropriate remedy.

{¶85} This court has observed:

Case No. 2024-G-0043

> Judicial review of a R.C. Chapter 2506 administrative appeal normally is confined to review of the complete transcript filed by the administrative agency with the court of common pleas. R.C. 2506.02 requires the filing of a transcript by the officer or body from which the appeal is taken. See *Kiel v. Green Local School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 149, 630 N.E.2d 716. If that transcript is deficient or incomplete, R.C. 2506.03 provides for the trial court to conduct an evidentiary hearing to "fill in the gaps." The record of the evidence may be incomplete without a transcript of all the original testimony. *McCann v. Lakewood* (1994), 95 Ohio App.3d 226, 642 N.E.2d 48. The court of common pleas must hear the appeal upon the transcript of the administrative proceedings and such additional evidence any of the parties may wish to introduce. *Eckmeyer v. Kent City School Dist. Bd. of Edn.* (Nov. 3, 2000), 11th Dist. No. 99-P-0117, 2000 Ohio App. LEXIS 5123. The court is required to hear such additional evidence as may be introduced by either party in the proceeding. See *Fleischmann v. Medina Supply Co.* (1960), 111 Ohio App. 449, 173 N.E.2d 168. The court of common pleas' authority to hear additional evidence under R.C. 2506.03 resembles a de novo hearing, requiring the court of common pleas to weigh the evidence presented to determine whether there is a preponderance of reliable, probative, and substantial evidence supporting the agency's decision. *Boncha v. Mentor Mun. Planning Comm.* (May 1, 1998), 11th Dist. No. 97-L-084, 1998 Ohio App. LEXIS 1943.

*Stein v. Geauga Co. Bd. of Health*, 2003-Ohio-2104, ¶ 14 (11th Dist.).

{¶86} Although the Center requests this court to uphold the trial court's reversal of the Board's decision on remand, it is necessary for the trial court to conduct an R.C. 2506.03 hearing for the following reasons: (1) the transcript of the hearing fails to disclose the 1956 regulation was properly admitted, and (2) even though the Board conducted an en masse swearing in, it is fundamentally unclear the information adduced from the zoning inspector was given under oath. *See* R.C. 2506.03(A)(1) and (A)(3). And even though a transcript of proceedings was filed, it is unclear what exhibits were entered into evidence.

{¶87} In the course of conducting the hearing, the trial court shall allow any additional evidence introduced by either party. We recognize that the original due process violation occurred during the remand hearing before the Board; nevertheless, that violation may be cured during a full hearing before the court of common pleas, pursuant to R.C. 2506.03.

{¶88} The Board's final assignment of error has merit, to the extent discussed in this opinion.

{¶89} For the reasons discussed above, the judgment of the Geauga County Court of Common Pleas is affirmed in part, reversed in part, and remanded for additional proceedings.


ROBERT J. PATTON, P.J.,

MATT LYNCH, J.,

concur.

Case No. 2024-G-0043

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error three and seven are with merit, and assignments of error one, two, four, five, and six are without merit. It is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas is affirmed in part and reversed in part. This case is remanded for further proceedings consistent with the opinion.

Costs to be taxed against the parties equally.

JUDGE EUGENE A. LUCCI

PRESIDING JUDGE ROBERT J. PATTON,
concurs

JUDGE MATT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-G-0043