[Cite as *Surber v. Greenville Twp. Bd. of Trustees*, 2026-Ohio-1305.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| GEOFFREY SURBER | : | |
| | : | C.A. Nos. 2025-CA-11; 2025-CA-12 |
| Appellee/Cross-Appellant | : | |
| | : | Trial Court Case No. 21-CV-475 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| GREENVILLE TOWNSHIP BOARD OF | : | Court) |
| TRUSTEES, ET AL. | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellants/Cross-Appellees | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on April 10, 2026, the judgment of the

trial court is reversed in part and affirmed in part.

Costs to be paid by appellee/cross-appellant.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately

serve notice of this judgment upon all parties and make a note in the docket of the service.

Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified

copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note

the service on the appellate docket.

For the court,

_____
ROBERT G. HANSEMAN, JUDGE

LEWIS, P.J., and TUCKER, J., concur.

OPINION

KATHLEEN F. RYAN and HANNA R. PUTHOFF, Attorneys for Appellants/Cross-Appellees

NICOLE L. POHLMAN, Attorney for Appellee/Cross-Appellant

HANSEMAN, J.

{¶ 1} This is an administrative appeal brought pursuant to Chapter 2506 of the Ohio Revised Code. It concerns a decision of the Greenville Township Board of Zoning Appeals ("the Board") finding that Geoffrey Surber, the owner of property located at 1468 Sater Street in Greenville, Ohio ("the Property"), failed to obtain proper zoning permits for three buildings he erected on the Property, identified as Buildings A, B, and C. Under the authority of R.C. 2506.01(A), Surber filed an appeal from the Board's decision in the Darke County Common Pleas Court. After reviewing the matter, the trial court found that Building A was properly permitted and that Buildings B and C were not. The trial court reversed the Board's decision as to Building A and affirmed the Board's decision as to Buildings B and C.

{¶ 2} Under the authority of R.C. 2506.04, appellants/cross-appellees, the Greenville Township Board of Trustees et al. ("the Township"), initiated the instant appeal in this court. The Township is appealing from the portion of the trial court's judgment that reversed the Board's decision as to Building A. Appellee/cross-appellant, Surber, filed a cross-appeal, challenging the portion of the trial court's judgment that affirmed the Board's decision as to Buildings B and C. For the reasons outlined below, the trial court's judgment is reversed as to Building A and affirmed as to Buildings B and C.

**Preliminary Issues**

{¶ 3} On September 5, 2025, this court issued an order indicating that it would take the following two issues under advisement and rule on them with the merits of this appeal:

2

(1) whether the trial court lacked subject-matter jurisdiction over Surber's administrative appeal and (2) whether the Township lacked standing to file its appeal in this court. These issues arose from Surber's designation of the Board as the sole appellee in the notice of appeal he filed with the trial court. The Township argues that it was improper for Surber to designate the Board as the appellee in his notice of appeal and that the improper designation divested the trial court of subject-matter jurisdiction over Surber's administrative appeal. Surber, on the other hand, maintains that the Township lacked standing to appeal the trial court's judgment because it was not named in the notice of appeal filed with the trial court. According to Surber, the Board, as the sole appellee named in the notice of appeal, is the only party that may appeal from the trial court's decision as to Building A. We now address these preliminary issues.

*The Board Is Not a Proper Party*

{¶ 4} "'In an appeal to the board of zoning appeals, the board does not become a party to that appeal.'" *Safest Neighborhood Assn. v. Athens Bd. of Zoning Appeals*, 2013-Ohio-5610, ¶ 11 (4th Dist.), quoting *A. Di Cillo & Sons, Inc. v. Chester Zoning Bd. of Appeals*, 158 Ohio St. 302, 304-305 (1952); *accord Rauch v. Jefferson Twp. Bd. of Zoning Appeals*, 2016-Ohio-967, ¶ 7 (2d Dist.). "'Just as a common pleas court is not a party in a case it decides and may not appeal from a decision of a court of appeals that reverses the common pleas' decision, the board of zoning appeals is not a party to [an] appeal and has no standing to appeal.'" (Bracketed text in original.) *Safest Neighborhood* at ¶ 11, quoting *Parker v. Swancreek Twp. Bd. of Zoning Appeals*, 2005-Ohio-538, ¶ 4 (6th Dist.). Indeed, "'a township board of zoning appeals is not a person adversely affected by an order of the common pleas court reversing one of its decisions, and thus may not institute an appeal to the court of appeals in which the order of reversal of the common pleas court is challenged.'" *Rauch* at

3

¶ 7, quoting *Bd. of Zoning Appeals for Harrison Twp. v. Resident Home Assn. for the Mentally Retarded of Greater Dayton, Inc.*, 1981 WL 2715, *2 (2d Dist. Mar. 6, 1981).

{¶ 5} "[T]he proper party to appeal under R.C. Chapter 2506 is 'the city, the city official responsible for enforcing the zoning regulations, or other persons aggrieved by the court's decision.'" *Safest Neighborhood* at ¶ 11, quoting *Sich v. Bd. of Zoning Appeals for the City Middletown*, 1984 WL 3386, *1 (12th Dist. July 16, 1984) (citing cases); *accord Rauch* at ¶ 7. In other words, "[i]n an appeal from the zoning board of appeals the aggrieved party may be either the one whose permit was denied or the administrative officer, depending on what the decision of the zoning board of appeals would be in the particular case. . . . [T]he zoning board of appeals is not and cannot be a party." *Spencer v. Bd. of Zoning Appeals of Perry Twp.*, 171 N.E.2d 914, 917 (5th Dist. 1960).

{¶ 6} With the foregoing principles in mind, we next address whether Surber's act of improperly designating the Board as the sole appellee in his notice of appeal divested the trial court of subject-matter jurisdiction over his administrative appeal and whether it affected the Township's standing to appeal the trial court's decision.

*The Trial Court Was Not Divested of Subject-Matter Jurisdiction*

{¶ 7} "Although R.C. 2506.01 provides a party with the right to appeal a decision of an administrative board, a common pleas court does not acquire subject-matter jurisdiction over the appeal 'unless and until the appeal is perfected.'" *Safety 4th Fireworks, Inc. v. Liberty Twp. Bd. of Trustees & Liberty Twp. Bd. of Zoning Appeals*, 2019-Ohio-3435, ¶ 14 (12th Dist.), quoting *AT&T Communications of Ohio, Inc. v. Lynch*, 2012-Ohio-1975 ¶ 17. Subject to some inapplicable exceptions, administrative appeals under Chapter 2506 "proceed in accordance with the provisions of R.C. Chapter 2505," which govern procedure on appeal. *AT&T* at ¶ 9; R.C. 2506.01. Under R.C. 2505.07, a party wishing to appeal an

4

administrative decision must perfect his or her appeal within 30 days after the administrative body enters the decision being appealed from. R.C. 2505.04 provides, in relevant part, that "[a]n appeal is perfected when a written notice of appeal is filed." R.C. 2505.05 sets forth what information must be designated in the notice of appeal and provides:

> The notice of appeal described in section 2505.04 of the Revised Code shall conform, in the case of an appeal of a final order, judgment, or decree of a court, with the Rules of Appellate Procedure or the Rules of Practice of the Supreme Court and shall designate, in the case of an administrative-related appeal, the final order appealed from and whether the appeal is on questions of law or questions of law and fact. In the notice, the party appealing shall be designated the appellant, and the adverse party, the appellee. In the case of an administrative-related appeal, the failure to designate the type of hearing upon appeal is not jurisdictional, and the notice of appeal may be amended with the approval of the appellate court for good cause shown.

{¶ 8} The requirements in R.C. 2505.05 are "'"not jurisdictional prerequisites and a failure to comply with them does not defeat an appeal, as the notice of appeal may be amended 'for good cause shown.'"'" *Russell v. City of Dublin Planning & Zoning Comm.*, 2007-Ohio-498, ¶ 18 (10th Dist.), quoting *Moore v. City of Cleveland Civil Serv. Comm.*, 11 Ohio App.3d 273 (8th Dist. 1983), quoting *Woods v. Civil Service Comm.*, 7 Ohio App.3d 304, 305-306 (8th Dist. 1983). "'Under R.C. 2505.04, the only jurisdictional requirement is the filing of the notice of appeal.'" *Id.*, quoting *Woods* at 305; *accord Safety 4th Fireworks* at ¶ 16 (the only act necessary to perfect an administrative appeal brought under R.C. 2506.01 is the timely filing of a notice of appeal); *Transamerica Inc. v. Nolan*, 72 Ohio St.3d 320 (1995), syllabus ("the only jurisdictional requirement for a valid appeal is the timely filing of

5

a notice of appeal"—if there are "other defects in the notice of appeal, a court of appeals is vested with discretion to determine whether sanctions, including dismissal, are warranted"). Therefore, the "failure to specifically name the city [or township] as an appellee does not invalidate the appeal or the trial court's jurisdiction." *Russell* at ¶ 19.

{¶ 9} We also note that "'R.C. 2505.05 has universally been liberally construed so as not to deny an appeal on technical grounds. . . . Thus, if the notice of appeal substantially informs all parties of the order and tribunal . . . from which the appeal is taken and to what court the appeal is taken, so that no parties are prejudiced, then it is sufficient notice for R.C. 2505.05.'" *Russell* at ¶ 24, quoting *Moore* at 275-276; *accord Woods* at 305 (naming wrong party as appellee in contravention of R.C. 2505.05 was not a jurisdictional defect inasmuch as appeal requirements should be "liberally construed so as not to deny an appeal on technical grounds"). For example, the Seventh District Court of Appeals recognized that it was improper for an appellant to name the board of zoning appeals as the sole appellee in its notice of appeal, yet declined to dismiss the appeal based on that technical error, stating:

> Although appellant should have named the zoning inspector in the appeal, this court will not dismiss the appeal on this technicality. The attorney representing the [Board of Zoning Appeals] is the same attorney that would be representing the zoning inspector. Likewise, the merit arguments asserted by the [Board of Zoning Appeals] are the same arguments that would be asserted by the zoning inspector. Furthermore, it is a common practice (even if it is a mistake) to name the board of zoning appeals in the appeal. Case captions of zoning appeals often indicate the boards of zoning appeals are named as the appellee, and in

6

those cases there is no question or argument as to whether they are the proper party.

*Broke Ass Phone v. Boardman Twp. Zoning Bd. of Appeals*, 2019-Ohio-4918, ¶ 15 (7th Dist.) (citing cases).

{¶ 10} In the instant case, even though Surber improperly named the Board as the appellee in his notice of appeal, he subsequently filed pleadings that also identified the Township and various Township officials as appellees in the action. *See* Plaintiff's Notices of Submission dated July 2, 2024 and November 1, 2024, and Joint Stipulation of Facts (Jan. 21, 2025). Like *Broke Ass Phone*, legal counsel for the Board was the same legal counsel who represented the Township and the various Township officials. *See* Notice of Appearance of Counsel (Dec. 5, 2024). Therefore, the Township and Township officials were necessarily informed of Surber's appeal through their connection to the Board. Not only were the Township and Township officials informed of the appeal, but they participated in the appeal and asserted the same merit arguments as the Board. Moreover, we find it significant that the trial court changed the case caption from "*Geoffrey Surber v. Greenville Township Board of Zoning Appeals*" to "*Geoffrey Surber v. Greenville Township Board of Trustees, et al.*," the latter of which we used for this appeal under the authority of App.R. 3(D).

{¶ 11} Because the Township and Township officials were substantially notified of Surber's appeal, which they participated in, we cannot say that they were prejudiced by Surber improperly naming the Board as the sole appellee in his notice of appeal. There is no basis to dismiss the appeal based on that technical defect. Moreover, there is no dispute that Surber timely filed his notice of appeal within 30 days of the Board's decision as required by R.C. 2505.07, which is the sole jurisdictional requirement for perfecting his administrative appeal. Accordingly, we find no jurisdictional error.

7

*The Township Had Standing to Appeal the Trial Court's Decision*

{¶ 12} "'Standing' is defined at its most basic as '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.'" (Bracketed text in original.) *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 2007-Ohio-5024, ¶ 27, quoting *Black's Law Dictionary* (8th Ed. 2004). "'Lack of standing . . . challenges a party's capacity to bring an action, not the subject-matter jurisdiction of the tribunal.'" *Meddock v. Meddock*, 2025-Ohio-1087, ¶ 14 (2d Dist.), quoting *Groveport Madison Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 2013-Ohio-4627, ¶ 25. That said, "[s]tanding is certainly a jurisdictional requirement; a party's lack of standing vitiates the party's ability to invoke the jurisdiction of a court—even a court of competent subject-matter jurisdiction—over the party's attempted action." *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 22.

{¶ 13} As previously discussed, "the proper party to appeal under R.C. Chapter 2506 is 'the city, the city official responsible for enforcing the zoning regulations, or other persons aggrieved by the court's decision.'" *Safest Neighborhood,* 2013-Ohio-5610 at ¶ 11 (4th Dist.), quoting *Sich,* 1984 WL 3386 at *1 (12th Dist.). The Supreme Court of Ohio has explained: "When an appeal is filed from a decision of a . . . municipality's board of zoning appeals, . . . the municipality . . . is a party adverse to the appellant and is necessary to the appeal." *Gold Coast Realty, Inc. v. Bd. of Zoning Appeals*, 26 Ohio St.2d 37 (1971), paragraph one of the syllabus. The Court also explained that "[w]here an adverse and necessary party appears and participates in an appeal from a decision by a . . . municipal board of zoning appeals, such party remains adverse and necessary in a further appeal to the Court of Common Pleas under R.C. Chapter 2506, even though not named as such in the appellant's notice of appeal filed therein." *Id*. at paragraph two of the syllabus. In other words, the Supreme Court has "recognized the principle that, although adverse parties have

not been named in the notices of appeal to common pleas courts, those parties remain adverse and may appeal to a higher court." *Sich* at *1, citing *Gold Coast* at paragraph two of the syllabus.

{¶ 14} In this case, the Township appeared and participated in Surber's initial appeal to the Board as an adverse, necessary party. The Township remained an adverse, necessary party even though Surber did not identify the Township as a party in the notice of appeal he filed with the trial court. The Township was represented by counsel during the trial court proceedings and defended itself against Surber's claims. When the trial court ruled against the Township as to Building A, the Township became an aggrieved party with a right to appeal the trial court's ruling under the authority of R.C. 2506.04. It would be illogical to allow Surber to rely on his own failure to designate the Township as a party in his notice of appeal as a reason to find that the Township lacked standing to appeal the trial court's ruling. *See generally Gold Coast* at 39 (noting the defect relied upon the appellee . . . was "one which it injected into the proceedings"). For the foregoing reasons, we find that the Township had standing to file the instant appeal.

{¶ 15} Having resolved the preliminary issues, we now discuss the facts and course of proceedings that are relevant to the Township's appeal and Surber's cross-appeal.

**Facts and Course of Proceedings**

{¶ 16} Surber purchased the Property in January 2019. The Property has an area of 15.2 acres. Approximately 11 of the acres is tillable farmland on which Surber grows either corn or soybeans. Surber has a cooperation agreement with two other parties who help him farm the Property. The Property is located in an I-1 Industrial Zoning District within the Township.

9

*Building A*

{¶ 17} In March 2019, Surber erected Building A on the Property. When Building A was first erected, Surber used it for his personal storage. However, since October 2019, Building A has operated as an automotive repair shop known as Dean's Auto Service. There is no dispute that the Township's Zoning Resolution permits that use in an I-1 Industrial District.

{¶ 18} Prior to erecting Building A, Surber submitted a "Darke County Zoning Permit Application Form" on March 15, 2019. Township's Hearing Ex. A, at SURBER_002.[1] On the application form, Surber indicated that it was his intent to build a 48 x 72 foot building that would be used as a garage. The bottom portion of the application form indicated that Surber's application was approved, that a commercial zoning permit for Building A was issued on March 20, 2019, and that Surber had paid a $864 permit fee. For an unexplained reason, the corresponding zoning permit placard was dated March 15, 2019. *Id.* at SURBER_003.

{¶ 19} Around the same time Surber applied for and received the commercial zoning permit, Surber submitted a "Building Notice" advising the Darke County Auditor that the erection of Building A had commenced on March 20, 2019. Township's Hearing Ex. B. The notice included an "Agricultural Use" certification. After the building notice was issued, the Township refunded Surber the $864 permit fee.

*Buildings B and C*

{¶ 20} In the Spring of 2020, Surber erected Buildings B and C on the Property. Surber used Building B for his personal farm office, which took up a majority of the building.

---

1. This citation refers to the Bates number stamped on the hearing exhibit, which is otherwise unpaginated. The entirety of the Board's hearing record is Bates-stamped SURBER_001 through SURBER_334.

Surber kept all farm records, property management records, and equipment records for each of his farms in the personal office space at Building B. Surber also rented out storage space in Building B and stored some of his own "agricultural equipment" that he used to maintain the Property. Building C, on the other hand, was exclusively used by Kraut Creek Natural Feed Company ("Kraut Creek"), which is a non-GMO livestock feed manufacturer. There is no dispute that Buildings B and C's uses were permitted in an I-1 Industrial District.

{¶ 21} Surber submitted a "Building Notice" for each building stating that the erection of the buildings had commenced on April 23, 2019. Township's Hearing Ex. D. Both building notices included an "Agricultural Use" certification. Surber did not apply for any zoning permits or pay any permit fee for Buildings B and C.

*The Zoning Inspectors and Zoning Violation Notices*

{¶ 22} Curtis Yount is the zoning inspector who signed and approved the commercial zoning permit for Building A and the building notices issued for Buildings A, B, and C. During that time, Yount was the zoning inspector for Darke County. In that capacity, Yount also served as the zoning inspector for several townships. There is no dispute that Yount served as the Township's zoning inspector until September 1, 2019. On that date, Scott Peele became the Township's new zoning inspector.

{¶ 23} After Peele took over as the Township's zoning inspector, the Township asked Peele to review records from Darke County dating back to 2018 for the purpose of obtaining agricultural exemption forms that were never provided to the Township. Peele obtained the records, reviewed the agricultural exemptions that had been issued by Darke County, and proceeded to investigate whether any properties did not comply with the size or use requirements that would have been necessary to obtain an agricultural exemption. In doing

11

so, Peele determined that Buildings A, B, and C had agricultural exemptions and that the buildings did not comply with the use requirements.

{¶ 24} On June 30, 2021, Peele, served Surber with a "Zoning Violation Notice" stating that the Property was in violation of the Township's Zoning Resolution because Surber had failed to obtain zoning permits prior to erecting Buildings A, B, and C. Surber's Hearing Ex. 3. Peele served Surber with a "Second and Final Zoning Violation Notice" on August 14, 2021, which restated the aforementioned violation and informed Surber of the following:

> Finally, if you are relying on a Zoning permit issued by Curtis Yount, that reliance is misplaced. Under Ohio law, no property owner has the right to rely upon a zoning certificate that is issued in error or in violation of the zoning resolution (as decided by the Courts when interpreting ORC 519.17.) Townships retain the right to enforce their zoning resolutions under such circumstances, and Greenville Township intends to exercise that right. Moreover, approval of a Zoning Permit for an agriculturally exempt use does not allow the property owner to change uses to a non-exempt use that is otherwise illegal in a particular zoning district. (*see* Section 508 of the Greenville Township Zoning Resolution). To the extent any such Zoning Permit was issued for your property on the basis of the agricultural exemption, such Zoning Permit is hereby **revoked**.

Surber's Hearing Ex. 4.

*Surber's Appeals to the Board and Trial Court*

{¶ 25} After receiving the zoning violation notices, Surber filed an appeal with the Board. On October 28, 2018, the Board held a hearing on Surber's appeal. Counsel for

12

Surber and counsel for the Township, along with Peele, Yount, and several Board members, attended the hearing. The respective counsel for the parties and the Board members questioned Peele and Yount about the commercial zoning permit and the building notices that Yount had issued for the Property.

{¶ 26} During the hearing, Yount indicated that he had approved the three building notices containing the "Agricultural Use" notation for the purpose of issuing Surber "ag[ricultural] permits" for Buildings A, B, and C. Board Hearing Tr. 37-38. Yount confirmed that he had issued those "permits" to Surber. *Id.* at 38. Yount told the Board that "[i]t was county policy that if a landowner came to me and asked for an ag[ricultural] permit, they were entitled. As long as they signed the permit, I was not to ask questions and that was policy." *Id*.

{¶ 27} Peele explained to the Board that what Yount had issued to Surber was an agricultural exemption, not a "permit." Board Hearing Tr. 18-19. An agricultural exemption exempts property from a township's zoning regulations; therefore, when property has an agricultural exemption, no zoning permits are required. *See* R.C. 519.21(A). An agricultural exemption can be obtained if the property is used for agricultural purposes or if the construction or use of buildings or structures on the property is incident to an agricultural use of the land. *Id*. Peele advised the Board that Yount had issued agricultural exemptions for Buildings A, B, and C, even though the buildings were not used for an agricultural purpose. Peele advised the Board that Surber was in violation of the Township's Zoning Resolution because he needed to obtain zoning permits for all three buildings.

{¶ 28} In response, Surber argued that Buildings B and C were being used for agricultural purposes, and therefore they were properly under an agricultural exemption and required no zoning permits. As for Building A, Surber claimed that he was in compliance with

13

the Township's Zoning Resolution because he had obtained a commercial zoning permit for Building A in March 2019.

{¶ 29} Peele argued that the commercial zoning permit for Building A had been nullified or canceled due to Surber's claim of an agricultural use for that building and his request for a refund of the $864 permit fee. Surber denied requesting a refund of the permit fee but confirmed receiving the refund from the Township. During the Board hearing, Surber never argued that Building A had an agricultural use, and his counsel advised the Board that Surber would pay the permit fee for Building A.

{¶ 30} After the hearing, the Board found that Surber did not have proper zoning permits for all three buildings and ordered him to get the required permits within 30 days. Under the authority of R.C. 2506.01, Surber filed in the trial court an administrative appeal from the Board's decision. The trial court considered the transcript of the Board's proceedings, which included several exhibits. In addition, the trial court considered several post-hearing depositions, which were taken of Surber, Peele, the chairman of the Board, and three Township trustees. The trial court also considered an affidavit from Board member Gary B. Zechar despite previously sustaining the Township's motion to strike the affidavit from the record.

{¶ 31} After reviewing the evidence, the trial court reversed the Board's decision as to Building A. The trial court found that there was nothing in the record indicating that Surber had ever represented that Building A had an agricultural use, that Yount had ever determined that Building A qualified for an agricultural exemption, or that the commercial zoning permit issued for Building A was premised on an unlawful agricultural exemption. The trial court found that the commercial zoning permit issued for Building A in March 2019 was valid and that the Board's finding that Surber had failed to obtain a zoning permit for

14

Building A was not supported by a preponderance of substantial, reliable, and probative evidence in the record.

**{¶ 32}** In contrast, the trial court affirmed the Board's decision as to Buildings B and C. The trial court found that these buildings did not have an agricultural use and that they were not incidental to an agricultural use under R.C. 519.21(A). As a result, the trial court found that the Township lacked authority to grant agricultural exemptions for Buildings B and C and that Yount had acted outside of his authority as zoning inspector when he issued the exemptions. Accordingly, the trial court determined that the agricultural exemptions issued by Yount for Buildings B and C were nullities and void as a matter of law. The trial court agreed with the Board's findings that Buildings B and C were not properly permitted. In so holding, the trial court declined to apply the doctrine of equitable estoppel as to Surber's reliance on Yount's representations.

**{¶ 33}** Under the authority of R.C. 2506.04**,** the Township now appeals from the trial court's decision reversing the Board's decision as to Building A, and it asserts a single assignment of error for review. Under the same authority, Surber cross-appeals from the trial court's decision affirming the Board's decision as to Buildings B and C, and he raises three assignments of error for review.

### Standard of Review for Chapter 2506 Appeals

**{¶ 34}** In appeals brought under R.C. Chapter 2506, the common pleas court "must weigh the evidence in the record, and whatever additional evidence may be admitted pursuant to R.C. 2506.03, to determine whether there exists a preponderance of reliable, probative and substantial evidence to support the agency decision." *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 207 (1979). "However, review of the trial court's decision by a court of appeals is '"more limited in scope."'" *Siebenthaler Co. v. Beavercreek*

15

*Twp. Bd. of Zoning Appeals*, 2009-Ohio-6595, ¶ 35 (2d Dist.), quoting *Henley v. Youngstown Bd. of Zoning Appeals,* 90 Ohio St.3d 142, 147 (2000), quoting *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 (1984). "R.C. 2506.04 gives the court of appeals reviewing authority of the common pleas court decision only on 'questions of law.'" (Emphasis deleted.) *Reed v. Rootstown Twp. Bd. of Zoning Appeals*, 9 Ohio St.3d 54, 59 (1984). However, "'[w]ithin the ambit of "questions of law" for appellate court review would be abuse of discretion by the common pleas court.'" *Siebenthaler* at ¶ 35, quoting *Kisil* at 34, fn. 4. Therefore, "[a]part from deciding purely legal issues, the court of appeals can determine whether the court of common pleas abused its discretion, which in this context means reviewing whether the lower court abused its discretion in deciding that an administrative order was or was not supported by reliable, probative, and substantial evidence." *Shelly Materials, Inc. v. City of Streetsboro Planning & Zoning Comm.*, 2019-Ohio-4499, ¶ 17, citing *Boice v. Ottawa Hills*, 2013-Ohio-4769, ¶ 7.

{¶ 35} "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *State v. Darmond*, 2013-Ohio-966, ¶ 34, citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id*.

{¶ 36} Applying these standards, we consider the parties' assignments of error. We first address the Township's single assignment of error and then address Surber's three assignments of error on cross-appeal.

**The Township's Assignment of Error**

{¶ 37} Under its assignment of error, the Township is challenging the trial court's reversal of the Board's decision as to Building A. The Township claims that the trial court abused its discretion when it found that there was not a preponderance of reliable, probative, and substantial evidence supporting the Board's decision finding that Building A was not properly permitted. We agree with the Township.

{¶ 38} As a preliminary matter, we note that the parties do not dispute that Surber used Building A to operate an automotive repair shop. There is also no dispute that such use is permitted in an I-1 Industrial District. The trial court found that in March 2019, Yount executed and approved a commercial zoning permit for Building A. The record supports that finding and there appears to be no dispute that the commercial zoning permit issued by Yount was the proper permit for Building A.

{¶ 39} The Township, however, argues that the commercial zoning permit obtained by Surber became void as a result of Surber claiming an agricultural exemption on Building A and obtaining a refund of the $864 permit fee. The trial court found that there was nothing in the record indicating that Surber had ever made the representation that the use of Building A was agricultural, that Yount had ever determined Building A qualified for an agricultural exemption, or that the commercial zoning permit issued for Building A was premised on an unlawful agricultural exemption. Upon review, we cannot reconcile these findings with the evidence in the record.

{¶ 40} During his 2024 deposition, Surber specifically testified that he had requested Yount to "permit" Building A as agricultural before he started erecting Building A. Specifically, Surber testified:

My conversations with Curtis [Yount] consist of that I told him ahead of time,

maybe three weeks, a month prior, to building Building A, that I wanted to get

an ag[ricultural] permit, and he said yeah, we'll get it. And I called him maybe

a week or two before that, before this date, and said we need to get an

ag[ricultural] permit. Okay. And then the Amish crew had started – showed up

and started erecting the building.

Surber Dep. Tr. 37.

{¶ 41} Surber's testimony added that despite asking for an agricultural "permit," Yount

had him complete a commercial zoning permit, which he questioned Yount about:

I noticed it when I signed, I said why does it say commercial, and he just said

– and then there's a fee too, and I remember him – when I said something

about the commercial, he said well, you're just going to pay money because it

will smooth things over with the trustees.

*Id*. at 38.

{¶ 42} Surber said that on the day he had completed the commercial zoning permit

form for Building A, he had indicated to Yount that he wanted "to do ag[ricultural] use at the

property." *Id*. at 40. Surber testified that "while we were [completing the commercial zoning

permit form], I was emphatic that this is agricultural, and [Yount] said yes." *Id*.

{¶ 43} Surber also testified to signing the "Building Notice" that notified the Darke

County Auditor that Building A had an "Agricultural Use." Surber Dep. Tr. 41; Township's

Hearing Ex. B. The "Building Notice" was signed and approved by Yount on March 20, 2019.

Throughout Surber's deposition testimony, he clearly indicated that he had sought and

obtained an agricultural exemption for Building A.

{¶ 44} Surber's deposition testimony is consistent with Yount's statements at the

Board hearing. During the hearing, Yount indicated that he had approved the three building

18

notices for Buildings A, B, and C in order to secure an "ag[ricultural] permit," i.e., an agricultural exemption for Surber. Board Hearing Tr. 37-38. As noted above, Yount said at the hearing that "[i]t was county policy that if a landowner came to me and asked for an ag[ricultural] permit, they were entitled. As long as they signed the permit, I was not to ask questions and that was policy." *Id.* at 38.

{¶ 45} We recognize that Surber never claimed during the Board hearing or in this appeal that Building A has an agricultural use or that he wanted Building A to qualify for an agricultural exemption. But Surber's deposition testimony and Yount's statements at the Board hearing clearly established that Surber had in fact requested and obtained an agricultural exemption for Building A in March 2019.

{¶ 46} The record also established that Surber sought a refund of the $864 fee that he had paid for the commercial zoning permit. During the Board hearing, Surber denied requesting a refund of the permit fee. Yet at his deposition, Surber stated the following regarding the fee, which he incorrectly described as an "agricultural permit fee":

[W]hen I went to acquire the ag[ricultural] permit for Building A, [Yount] charged me the eight hundred sixty-four dollar fee, and I asked him why do I have to pay for an ag[ricultural] permit fee. I don't think anyone else has had to do that. He said, well, it will just smooth things over with the trustees. I said okay. So I paid the fee.

Then I think it was somewhere May, June 2019 I e-mailed Matt Kolb a copy of the Ohio Revised Code because I began asking around, has anybody paid for an ag[ricultural] permit, and I remember I had some conversations with [Yount], did Justin Hines pay for an ag[ricultural] permit, did Jeremy Edger pay for an ag[ricultural] permit, Shaun Thornhill, and

19

started going through the list, and nobody had paid for an ag[ricultural] permit ever before me and I didn't understand why I was unique in that respect.

So then that caused me to research around. I found the Ohio Revised Code and e-mail it to Kolb, then presented I think around a June—May, June meeting of the trustees, which I believe you have the audio for, and discussed the permit. And I say that there was – I think Curis Yount was there discussing it. I say that you guys should consult your legal counsel before you do anything on it, that way everybody is on the same page. I remember saying something along those lines, paraphrasing. . . .

. . .

The product of that conversation was them consulting their legal counsel and then I believe they got a legal opinion, which is in your evidence, and then later—months later refunded me the fee.

Surber Dep. Tr. 49-50.

{¶ 47} Surber's testimony about the permit fee is consistent with Peele's version of events. At the Board hearing, Peele explained that the permit fee was refunded because Surber had asked for a refund due to him claiming an agricultural exemption for Building A. Board Hearing Tr. 49-50. Peele explained that Surber "went to the prosecuting attorney for a ruling, since he was then claiming it was an agricultural, so we were told that we needed to give . . . back the money if it was going to be used for agricultural." *Id.* at 77.

{¶ 48} During his deposition, Peele similarly testified that Surber had applied for the appropriate commercial zoning permit for Building A and paid the permit fee, but then he had asked for the permit to be rescinded and for an agricultural exemption to be issued

20

instead. Peele Dep. Tr. 32-33. Peele testified that when Surber had asked for the permit fee to be refunded, the Township went to "the Prosecutor's Office, and they told the Township that they needed to refund the money if [Surber] was requesting an ag[ricultural] instead of the commercial permit." *Id*. at 31. Peele also explained that the refund of the permit fee and Surber's claimed agricultural use voided the commercial zoning permit that Surber had previously obtained for the building. *Id*. at 33, 37-38; Board Hearing Tr. 56.

**{¶ 49}** While the record supports Surber's representation that the prosecutor's office had told the Township to refund him the permit fee, Surber's claim that the refund did not come at his behest is disingenuous given his deposition testimony. It is clear from his testimony that he researched the matter and contacted various officials in order to have the $864 permit fee refunded to him because of his claim that Building A was agricultural.

**{¶ 50}** In sum, the evidence established that Surber initially obtained the proper commercial zoning permit for Building A and paid the permit fee. But Surber voided the permit by having Yount execute and approve an agricultural exemption for Building A and by requesting a refund of the permit fee, which the Township provided. There was a preponderance of reliable, probative, and substantial evidence supporting the Board's decision finding that Building A was not properly permitted. It was unreasonable and thus an abuse of discretion for the trial court to find otherwise.

**{¶ 51}** The Township's assignment of error is sustained.

### Surber's First Assignment of Error

**{¶ 52}** Under his first assignment of error, Surber argues that the trial court erred by finding that Buildings B and C did not qualify for an agricultural exemption under R.C. 519.21. We disagree.

21

{¶ 53} As a preliminary matter, we note that the Supreme Court of Ohio has explained that "Ohio townships have no inherent or constitutionally granted police or zoning power." *Terry v. Sperry,* 2011-Ohio-3364*, ¶* 18, citing *Yorkavitz v. Bd. of Columbia Twp. Trustees*, 166 Ohio St. 349 (1957). "'Accordingly, the zoning authority possessed by townships in the state of Ohio is limited to that which is specifically conferred by the General Assembly.'" *Id*., quoting *Bd. of Bainbridge Twp. Trustees v. Funtime, Inc.*, 55 Ohio St.3d 106, 108 (1990).

{¶ 54} "R.C. 519.02 authorizes township trustees, in the interest of the public health and safety, to adopt resolutions limiting the size and location of buildings and other structures and the uses of land for trade, industry, residence, recreation, or other purposes. That power, however, is limited by R.C. 519.21." (Footnote omitted.) *Id.* at ¶ 20

{¶ 55} As relevant to this case, R.C. 519.21(A) provides that "sections 519.02 to 519.25 of the Revised Code confer no power on any township zoning commission, board of township trustees, or board of zoning appeals to prohibit the use of any land for agricultural purposes or the construction or use of buildings or structures incident to the use for agricultural purposes of the land on which such buildings or structures are located, . . . and no zoning certificate shall be required for any such building or structure." Accordingly, "R.C. 519.21(A) provides two circumstances under which the use of a property is exempt from township zoning regulations: (1) the property is used for agricultural purposes or (2) the construction or use of buildings or structures on the property is incident to an agricultural use of the land." *Terry* at ¶ 21; *accord Miami Twp. Bd. of Trustees v. Powlette*, 2022-Ohio-3459, ¶ 16 (2d Dist.).

{¶ 56} The resolution of this matter is dependent on determining whether Buildings B and C were buildings used for agricultural purposes or their construction or use was incident to an agricultural use of the land. This is a factual determination that is within the province

22

of the trial court. *Gainer v. Cavanaugh*, 2021-Ohio-2173, ¶ 40 (5th Dist.), citing *Siebenthaler*, 2009-Ohio-6595 (2d Dist.), and *State v. Huffman*, 20 Ohio App.2d 263 (3d Dist.); *accord Powlette* at ¶ 19; *Board of Twp. Trustees v. Schwab,* 2000 WL 296077, *4 (3d Dist. Mar. 22, 2000).

{¶ 57} "In order to qualify as an agricultural use or incident to an agricultural use there must be sufficient evidence that the item in controversy is used for agriculture or the structure use must be 'directly and immediately related to agricultural use. It must be either usually or naturally and inseparably dependent upon agricultural use.'" *Schwab* at *4, quoting *Huffman* at 269; *accord Gainer* at ¶ 41-42. This analysis "requires a review of the principal or dominant use of the structure." *Gainer* at ¶ 55. "[T]he primary use of a building must be agricultural before its use can be deemed incidental to the agricultural use of the land." *Shalersville Twp. Bd. of Trustees v. Hawkins*, 2016-Ohio-2801, ¶ 21 (11th Dist.).

{¶ 58} For purposes of township zoning statutes, R.C. 519.01 defines "agriculture" to include the following:

[F]arming; ranching; algaculture meaning the farming of algae; aquaculture; apiculture; horticulture; viticulture; animal husbandry, including, but not limited to, the care and raising of livestock, equine, and fur-bearing animals; poultry husbandry and the production of poultry and poultry products; dairy production; the production of field crops, tobacco, fruits, vegetables, nursery stock, ornamental shrubs, ornamental trees, flowers, sod, or mushrooms; timber; pasturage; any combination of the foregoing; and the processing, drying, storage, and marketing of agricultural products when those activities are conducted in conjunction with, but are secondary to, such husbandry or production.

23

{¶ 59} The Ninth District Court of Appeals held that a beef jerky business did not constitute "agriculture" within the meaning of R.C. 519.01. *Litchfield Twp. Bd. of Trustees v. Nimer*, 2012-Ohio-5431, ¶ 19 (9th Dist.). While the court found that the care of livestock on the property at issue constituted agriculture as defined in the statute, it concluded that the activity was secondary to the marketing and processing of beef jerky at the property. *Id*. Significantly, the property maintained only 21 head of cattle, but the beef jerky operation involved thousands of pounds of meat brought in from other farms. In other words, the meat used for the beef jerky production was obtained from cattle that were not raised or cared for at the property. *Id*. The court noted that the processing and marketing of the beef products could have fallen within the definition of agriculture if those operations had been secondary to the care of the cattle, but that was not the case, as the processing and marketing of the beef products were the primary operations. *Id*.

{¶ 60} The Eleventh District Court of Appeals found an agricultural exemption did not apply to additions to a residence that were going to be used to breed and raise dogs. *Concord Twp. Trustees v. Hazelwood Builders, Inc.*, 2005-Ohio-1791 (11th Dist.). The trial court concluded that the agricultural exception was inapplicable because the building's use was not incidental to agriculture, as "the primary purpose of the residence was residential living, and breeding and raising dogs was an ancillary use." *Id*. at ¶ 42. On appeal, the Eleventh District found that the trial court's determination was supported by competent, credible evidence and noted that the structure in question was primarily designed for residential living and that only a small portion of it would be used for the dogs. *Id*. at ¶ 43.

{¶ 61} The Eleventh District Court of Appeals also found that an agricultural exemption did not apply to a landscaping service that sold nursery stock and compost under circumstances where the nursery stock was not grown on the property but was instead

24

shipped in, planted on the property for a brief period, and then shipped out when sold or used in a landscaping job. *State ex rel. Fox v. Orwig,* 1995 WL 787459, *3-4 (11th Dist. Sept. 15, 1995). The court found that the compost was not derived from material found on the property, but rather it was created from waste, leaves, and other byproducts of the landscaping business. *Id*.

*Building B*

{¶ 62} In this case, the record established that Surber used Building B as his personal farm office, and that a "majority of the building" was used for that purpose. Surber Dep. Tr. 18. Surber kept all of his farm records, property management records, and equipment records for each of his farms in the personal office space in Building B. The remainder of the building was rented out for personal storage space on a month-to-month basis. Surber also claimed that he used part of Building B to store some of his own "agricultural equipment" that he used to maintain the Property, i.e., to "cut the grass, weeds, [and] clean up everything." Board Hearing Tr. 31. Surber also claimed that he had a "commercial lavender operation" in front of Building B. *Id.* at 30.

{¶ 63} Upon review, we find that the trial court did not abuse its discretion by finding that there was a preponderance of reliable, probative, and substantial evidence in the record supporting the trial court's findings that Building B was not used for an agricultural purpose and that its use was not incident to an agricultural use of the land. It is clear from the record that Building B was predominantly used for Surber's personal office and that the remaining parts of the building were used for personal storage. These uses do not fit under the definition of "agriculture." Accordingly, they are not primarily and directly related to an agricultural use.

{¶ 64} Although Surber claimed that he used part of Building B to store agricultural equipment, the record indicates that the equipment was not used to farm the Property or produce crops, but rather to mow, weed, and clean up the area. Furthermore, it is clear that the storage of agricultural equipment was an ancillary use, which again means that the use of Building B was not primarily and directly related to an agricultural use.

{¶ 65} As for Surber's commercial lavender operation, Surber never explained how Building B was used in the operation. Surber simply indicated that the lavender operation was located in front of Building B. There is nothing in the record indicating that the use of Building B was directly and immediately related to the lavender operation. Like the storage of agricultural equipment, Surber's commercial lavender operation was an ancillary use.

*Building C*

{¶ 66} Surber testified that Building C was exclusively used by Kraut Creek, which is an organization that sells non-GMO livestock feed. Surber's testimony confirmed that Kraut Creek sourced its feed from another farm and that none of its feed was sourced from the Property. In other words, Kraut Creek in no way utilized the agricultural resources on the Property to produce its feed. The record indicates that Kraut Creek simply used Building C to process, store, and distribute the feed. Surber claimed that there were chickens in a grass area near Building C, but nothing in the record indicates that Building C was used to farm chickens or eggs. Rather, Surber indicated that Building C was "filled with livestock feed and supplies." Board Hearing Tr. 31.

{¶ 67} Upon review, we find that the trial court did not abuse its discretion by finding that there was a preponderance of reliable, probative, and substantial evidence in the record to support the trial court's findings that Building C was not used for an agricultural purpose and that its use was not incident to an agricultural use of the land. "[T]he processing, drying,

storage, and marketing of agricultural products" falls under the definition of agriculture in R.C. 519.01 "when those activities are conducted in conjunction with, *but are secondary to*, such husbandry or production." (Emphasis added.) R.C. 519.01. Similar to *Litchfield* and *Orwig*, the evidence in this case established that the processing, storage, and distribution of Kraut Creek's feed, an agricultural product, in Building C was not secondary to the feed's production. Rather, it was the primary use of Building C, as the feed was sourced from another farm and none of the feed was sourced from the Property. Because Building C did not have a use that was primarily and directly related to an agricultural use of the land, its use was also not incidental to an agricultural use. *See Hawkins*, 2016-Ohio-2801 at ¶ 21 (11th Dist.) ("the primary use of a building must be agricultural before its use can be deemed incidental to the agricultural use of the land").

{¶ 68} A preponderance of reliable, probative, and substantial evidence supported the trial court's finding that Surber's uses for Buildings B and C were not agricultural or incidental to an agricultural use of the land. The trial court did not abuse its discretion by concluding that Buildings B and C did not qualify for an agricultural exemption under R.C. 519.12.

{¶ 69} Surber's first assignment of error is overruled.

**Surber's Second Assignment of Error**

{¶ 70} Under his second assignment of error, Surber contends that the trial court erred by failing to apply the doctrine of equitable estoppel with regards to its decision regarding Buildings B and C. Surber claims that he relied on Yount's approval of his proposed uses for Buildings B and C as qualifying for agricultural exemptions and that there was no dispute that Yount had authority to issue such exemptions for the Township.

27

{¶ 71} "'[T]he doctrine of equitable estoppel precludes a party from asserting certain facts where the party, by his conduct, has induced another to change his position in good faith reliance upon the party's conduct.'" *State Farm Mut. Auto. Ins. Co. v. Ingle*, 2008-Ohio-6726, ¶ 32 (2d Dist.), quoting *Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.*, 93 Ohio App.3d 292, 295 (9th Dist. 1994). "To successfully raise a claim of equitable estoppel, the party asserting the estoppel must have relied on conduct of the other party in such a manner as to change his position for the worse, and that reliance must have been reasonable in that the party claiming estoppel did not know and could not have known that the other party's conduct was misleading." *Northridge Local Schools Bd. of Education v. Montgomery Cty. Bd. of Revision*, 2022-Ohio-495, ¶ 26 (2d Dist.), citing *Shampton v. Springboro*, 2003-Ohio-1913, ¶ 34.

{¶ 72} "It is well established that the doctrine of equitable estoppel is inapplicable against a political subdivision when the political subdivision is engaged in a governmental function." *Northridge* at ¶ 27, citing *Hortman v. Miamisburg*, 2006-Ohio-4251, ¶ 25, and *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145-146 (1990). This is because the government cannot be estopped from its duty to protect the public welfare, and because to hold otherwise would grant a right to violate the law. *Frantz* at 146. "If a government agency is not permitted to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of all citizens in obedience to the rule of law is undermined." *Id.*, citing *Heckler v. Community Health Serv. of Crawford Cty., Inc.*, 467 U.S. 51, 60 (1984).

{¶ 73} Some courts have found that this is merely a general rule that may or may not apply depending on the facts of the case. *See Cleveland Skydiving Ctr., Inc. v. Troy Twp. Bd. of Zoning Appeals*, 2025-Ohio-2808, ¶ 46 (11th Dist.), citing *City of Oxford v. Day*,

28

1998 WL 117167 (12th Dist. Mar. 16, 1998). However, the Supreme Court of Ohio indicated otherwise in *Hortman* when it stated the following:

> This court has held, "It is well-settled that, as a general rule, the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function." *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 145-146, 555 N.E.2d 630. *See, also*, *Sekerak v. Fairhill Mental Health Ctr.* (1986), 25 Ohio St.3d 38, 25 OBR 64, 495 N.E.2d 14, and *Besl Corp. v. Pub. Util. Comm.* (1976), 45 Ohio St.2d 146, 150, 74 O.O.2d 262, 341 N.E.2d 835. The Hortmans claim that because this court has inserted the words "generally" or "as a general rule" when discussing the principles of estoppel, this case may be the exception to that general rule. We disagree and hold that the doctrines of equitable estoppel and promissory estoppel are inapplicable against a political subdivision when the political subdivision is engaged in a governmental function. *Sun Refining & Marketing Co. v. Brennan* (1987), 31 Ohio St.3d 306, 31 OBR 584, 511 N.E.2d 112; *State ex rel. Chevalier v. Brown* (1985), 17 Ohio St.3d 61, 17 OBR 64, 477 N.E.2d 623.

*Hortman* at ¶ 25.

**{¶ 74}** This court has followed the Supreme Court's holding in *Hortman* on multiple occasions. *See, e.g.*, *Northridge,* 2022-Ohio-495 at ¶ 27 (2d Dist.); *State ex rel. Clearcreek Assoc. Ltd. v. Montgomery Cty.*, 2025-Ohio-486, ¶ 18 (2d Dist.); *Burks v. Dayton Pub. Schools Bd. of Edn.*, 2023-Ohio-1227, ¶ 44 (2d Dist.). Therefore, we again find that the doctrine of equitable estoppel is "inapplicable against a political subdivision when the political subdivision is engaged in a governmental function." *Hortman* at ¶ 25.

{¶ 75} In this case, there is no dispute that the Township is a political subdivision. *See* R.C. 2744.01(F). It is also well established that the enforcement of zoning ordinances is a governmental function. *See Colerain Twp. Bd. of Trustees v. Bench Billboard Co.*, 2020-Ohio-4684, ¶ 22 (1st Dist.); *Ghindia v. Buckeye Land Dev., L.L.C.*, 2007-Ohio-779, ¶ 36-38 (11th Dist.); *Petitti v. Plain Twp. Bd. of Zoning Appeals*, 2003-Ohio-6849, ¶ 23 (5th Dist.). Therefore, the trial court correctly declined to apply the doctrine of equitable estoppel to this case.

{¶ 76} Although not discussed by the trial court, we also find that the equitable doctrine of laches does not apply. Surber essentially raised a laches defense before the trial court when he argued that Peele did not issue the zoning violation notice until over two years after Building A had been erected and a year and a half after Buildings B and C had been erected. Surber claimed that there was "no reasonable explanation for why the Township would delay issuing a violation notice to [him], allowing him to not only erect the buildings, but also allowing him to believe that he had taken all of the right steps to erect and operate said buildings for well over a year." Reply Brief of Surber (Apr. 11, 2025), p. 8.

{¶ 77} "'The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party.'" *State ex rel. Ascani v. Stark Cty. Bd. of Elections*, 83 Ohio St.3d 490, 493 (1998), quoting *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145 (1995); *accord Blankenship v. Blackwell*, 2004-Ohio-5596, ¶ 19.

{¶ 78} Like the doctrine of equitable estoppel, the equitable doctrine of laches may not be applied to prevent local governments from enforcing a zoning regulation. *See Frantz*, 51 Ohio St.3d at 146; *Bd. of Trustees v. Buchs,* 1986 WL 3817, *2, fn. 1 (9th Dist. Mar. 26,

1986) ("laches does not preclude the enforcement of a zoning resolution" ). Furthermore, Surber's laches claim only references the Township's unreasonable delay without specifically arguing how he was prejudiced by the delay. Prejudice cannot be inferred from a mere lapse of time. *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn*., 71 Ohio St.3d 26, 35 (1994).

**{¶ 79}** Surber's second assignment of error is overruled.

### Surber's Third Assignment of Error

**{¶ 80}** Under his third assignment of error, Surber claims that the trial court erred by striking the affidavit of Gary B. Zechar from the evidentiary record.

**{¶ 81}** A trial court's decision to grant or overrule a motion to strike evidence is within its sound discretion and will not be overturned on appeal absent a showing of abuse of discretion. *Diller v. Miami Valley Hosp.*, 2017-Ohio-9051, ¶ 62 (2d Dist.). "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *Darmond*, 2013-Ohio-966 at ¶ 34, citing *Adams*, 62 Ohio St.2d at 157. "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc.*, 50 Ohio St.3d at 161. "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id*.

**{¶ 82}** In the affidavit in question, Zechar averred that he had attended the Board's hearing on Surber's appeal and that 30 minutes prior to the hearing, he and the other Board members met with Peele and discussed Peele's position on the matter. Zechar averred that he had felt pressured by Peele to find that Surber was in violation of the Township's Zoning Resolution. Zechar further averred that because Surber had obtained zoning permits from Yount and because Yount was the Township's authorized zoning inspector during the

31

relevant time period, he believed the Board's decision finding that Buildings A, B, and C were not properly permitted was unreasonable and unsupported by the record. Brief of Surber (Mar. 7, 2025), Exhibit A.

{¶ 83} In ruling on Surber's appeal, the trial court noted that it had sustained the Township's motion to strike Zechar's affidavit. The trial court, however, also stated that it "assume[d] *arguendo*, that the Affidavit was admitted as evidence" and that the court had "reviewed the contents of the Affidavit and the references to it by Appellant's counsel." (Emphasis in original.) Decision, Order and Entry (May 1, 2025), p. 12. Despite striking the affidavit, the record indicates that the trial court considered it when ruling on Surber's administrative appeal. In doing so, the trial court found that the information in the affidavit did not impact its decision.

{¶ 84} Under these circumstances, even if we were to assume that the trial court had abused its discretion by striking the affidavit, the record indicates that any such error would have been harmless. Harmless error is "[a]ny error, defect, irregularity, or variance which does not affect substantial rights" and "shall be disregarded." Crim.R. 52(A). In other words, "[h]armless error is any error that does not affect the outcome of the case and, thus, does not warrant a judgment overturned or set aside." *State v. Haynes*, 2004-Ohio-3514, ¶ 16 (11th Dist.), citing *State v. Brown*, 2003-Ohio-5059, ¶ 25, and Crim.R. 52(A).

{¶ 85} In this case, any error in striking Zechar's affidavit would have been harmless error because the trial court did in fact consider the contents of the affidavit when ruling on Surber's administrative appeal. Furthermore, we agree with the trial court that the information in the affidavit in no way impacted the outcome of the proceeding.

{¶ 86} Surber's third assignment of error is overruled.

**Conclusion**

**{¶ 87}** Having sustained the Township's assignment of error and having overruled Surber's assignments of error on cross-appeal, the judgment of the trial court is reversed in part and affirmed in part. Specifically, the judgment of the trial court reversing the Board's decision as to Building A is reversed, and the judgment of the trial court affirming the Board's decision as to Buildings B and C is affirmed.

. . . . . . . . . . . . .

LEWIS, P.J., and TUCKER, J., concur.